CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

2013 AUG 26  PM 4: 23

DEPUTY CLERK_____

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD. ET AL., and THE OFFICIAL STANFORD INVESTORS COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>YOLANDA SUAREZ,<br><br>Defendant. | § § § § § § § § § § § § § | Case No. 3:10-CV-2581 |

## REPORT AND RECOMMENDATION

Defendant Yolanda Suarez ("Suarez") has moved to dismiss (Motion to Dismiss, Doc. 13) the First Amended Complaint Against Yolanda Suarez ("Complaint," Doc. 12) pursuant to FED. R. CIV. P. 12(b)(6). Suarez's primary contention is that Florida law, and not Texas law, should control the claims made by the Receiver Ralph S. Janvey and the Official Stanford Investors Committee (collectively, "Plaintiffs"). According to Suarez, under Florida law the Plaintiffs' claims warrant dismissal because they fail to meet the pleading standards under either FED. R. CIV. P. 8(a)(2) or FED. R. CIV. P. 9(b). Additionally, Suarez urges dismissal of Plaintiffs' claims as untimely and therefore barred in whole or in part by various Florida statutes of limitations. For the reasons that follow, the Court should deny the majority of objections raised in Suarez's Motion to Dismiss (Doc. 13) and grant only her objection that portions of Plaintiffs' constructive fraud claim are time-barred.

# I. BACKGROUND

Plaintiffs' action against Suarez

> arises out of the Securities and Exchange Commission's (the 'SEC') ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the 'Stanford Defendants'). As part of that litigation, this Court appointed a receiver (the 'Receiver') and authorized him to commence any actions necessary to recover assets of the Receivership Estate.

*Janvey v. Alguire*, 846 F. Supp. 2d 662, 666 (N.D. Tex. 2011) (Godbey, J.) (citing Second Am.

Order Appointing Receiver, July 19, 2010 (Doc. 1130) (the "Receivership Order"), in *SEC v.*

*Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09–CV–0298–N (N.D. Tex. filed Feb. 17, 2009)

(hereinafter "*Stanford*")).

## A. The Parties

The parties to this case are:

*1. Ralph S. Janvey ("Plaintiff Janvey"), the Court-Appointed Receiver.* Plaintiff Janvey was

appointed by the Court as Receiver of the Receivership Estate stemming from *Stanford*. The

Court vested Janvey with "the full power of an equity receiver under common law as well as . . . .

[authorization] to immediately take and have complete and exclusive control, possession, and

custody of the Receivership Estate and to any assets traceable to assets owned by the

Receivership Estate. Receivership Order at 3–4. The Court further instructed Janvey to "[c]ollect,

marshal, and take custody, control, and possession of all the funds, accounts, mail, and other

assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable

to assets owned or controlled by the Receivership Estate, wherever situated." *Id.* at 4. He was

also instructed to file "such actions or proceedings to impose a constructive trust, obtain

possession, and/or recover judgment with respect to persons or entities who received assets or

records traceable to the Receivership Estate." *Id.* at 5.

*2. The Official Stanford Investors Committee ("Plaintiff OSIC").* Plaintiff OSIC was created by the Court's Order of Aug. 10, 2010 (Doc. 1149) ("OSIC Order") in *Stanford.* It is an organization composed of "individual Stanford investors or attorneys representing Stanford investors." Order of Sept. 24, 2012 (Doc. 33) ("IMG Order") at 3, in *Janvey v. IMG Worldwide, Inc.*, Civil Action No. 3:11–CV–0117–N (N.D. Tex., filed Jan. 18, 2011) (citing OSIC Order at 3–4). Here, as in *IMG Worldwide*, "[the] OSIC seeks to prosecute this action, with the consent of the Receiver, in order to obtain funds for the benefit of the Receivership Estate." IMG Order at 3.

*3. Yolanda Suarez.* Defendant Suarez "was the Chief of Staff of Stanford Financial Group Company and was the Secretary and a member of the board of directors for Stanford Group Holdings, Inc." Complaint (Doc. 12, ¶ 3). At the time of Plaintiffs' Complaint, Suarez resided in Miami, Florida. *Id.* (Doc. 12, ¶ 15).

### *B. Allegations in the Complaint*

The Plaintiffs seek disgorgement of Certificate of Deposit ("CD") proceeds that the Stanford Parties directly or indirectly transferred to Suarez. (Doc. 12, ¶¶ 4, 29, 36). Plaintiffs allege that Suarez "performed no services for the CD Proceeds she received; performed services that did not constitute reasonably equivalent value in exchange for the CD Proceeds she received; or performed only services that were in furtherance of the Ponzi scheme, which cannot be reasonably equivalent value as a matter of law." (Doc. 12, ¶ 5). The Plaintiffs contend that each payment of CD proceeds the Stanford Parties transferred to Suarez was made with actual intent to hinder, delay, and defraud creditors. (Doc. 12, ¶ 6). Further, the Plaintiffs claim that "the Stanford Parties transferred the funds to Suarez at a time when the Stanford Parties were insolvent, and the Stanford Parties did not receive reasonably equivalent value in exchange for the transfers." (Doc. 12, ¶ 36). The Plaintiffs assert the basis of their recovery under theories of

"fraudulent transfers under applicable law" and unjust enrichment (Doc. 12, ¶ 8), and seek to recover a total of at least $5,173,469.25 from Suarez. (Doc. 12, ¶ 30).

## II. CHOOSING THE APPLICABLE LAW TO APPLY

Before deciding which state's substantive law should control the issues raised by the parties here, "the Court must first determine which choice-of-law rules should be applied." *In re Soporex, Inc.*, 446 B.R. 750, 761 (Bankr. N.D. Tex. 2011). Here, both parties assert that Texas choice of law rules should determine the applicable laws in this case. Motion to Dismiss (Doc. 13 at 5); Plaintiffs' Response (Doc. 14, ¶¶ 6–7).

Suarez urges application of Florida law, whereby Florida's Uniform Fraudulent Transfer Act ("FUFTA") would control Plaintiffs' claims concerning fraudulent transfer and attorneys' fees, and other applicable Florida law would control Plaintiffs' unjust enrichment claim. Motion to Dismiss (Doc. 13 at 5). In support of this contention, Suarez submits that "the alleged fraudulent transfers were made by Stanford Financial Group Company, a Florida entity, to Ms. Suarez, a Florida resident, in Florida. The parties' business relationship was centered in Florida." *Id.* (Doc. 13 at 5). Suarez offers no other factual information why Florida law should control. She supports her legal argument by citing to a recent order in which Judge Godbey applied Florida law to a conversion claim in a proceeding involving Plaintiff Janvey and the Stanford Parties. *Id.* (Doc. 13 at 5 (citing "Reeves-Stanford Order" at Doc. 22 pp. 21–22, in *Janvey v. Reeves-Stanford*, Civil Action No. 3:09-cv-02151-N-BL (N.D. Tex., filed Nov. 18, 2011)). The remainder of Suarez's Motion to Dismiss analyzes the alleged deficiencies in the Plaintiffs' Complaint under Florida law.

Plaintiffs urge the Court to apply Texas law to their claims. Plaintiffs' Response (Doc. 14, ¶¶ 6–7). Plaintiffs support their position by citing to a recent opinion of this Court where it

observed that the Texas Uniform Fraudulent Transfer Act ("TUFTA") "effectively has become law of the case" in a proceeding involving Plaintiff Janvey's claims against former employees of the Stanford Parties. *Id.* (Doc. 14, ¶ 6 (quoting *Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011)). Plaintiffs point to the similarities between the present case and *Alguire* and contend that Suarez has failed to provide the Court with "sufficient information" that Florida law should apply over Texas law. *Id.* (Doc. 14, ¶ 6). Further, Plaintiffs dispute Suarez's position that Texas and Florida laws are in conflict—in Plaintiffs' view the two states' fraudulent transfer and unjust enrichment laws are substantially identical. *Id.* (Doc. 14, ¶ 7). According to Plaintiffs, "[u]nder Texas choice-of-law rules, it is unnecessary to choose which state's law applies if there is no conflict between them." *Id.* (Doc. 14, ¶ 7). Finally, with regard to the "most significant relationship" test under Texas choice of law rules, Plaintiffs assert that "the question of which state has the most significant relationship with the issues in this case is a question of fact and is not appropriate for decision at this stage." *Id.* (Doc. 14, ¶ 7). Much like Suarez, Plaintiffs direct their brief to the application of one state's law, but elect to focus on Texas' laws instead of Florida's.

At the onset, it is notable that the pleading standards concerning claims for fraudulent transfers and unjust enrichment are substantially the same under either Florida or Texas law, and application of either state's law would reach the same result. However, Texas and Florida law depart in their treatment of attorneys' fees, and treatment of statutes of limitations and equitable tolling for claims pertaining to unjust enrichment. Accordingly, the issue of which state's law to apply warrants this Court's attention.

As noted by both parties, Texas courts utilize the "most significant relationship" test to determine which state's law applies to a particular substantive issue. *See Coghlan v. Wellcraft*

*Marine Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001) (citing *Duncan v. Cessna Aircraft Co.*, 665

S.W.2d 414, 421 (Tex. 1984)). This test is based on the RESTATEMENT (SECOND) OF CONFLICT

OF LAWS §§ 6 and 145, and invokes a multi-factor methodology in determining which state has

the most significant relationship to the substantive issues involved in a dispute. *See Duncan*, 665

S.W.2d at 421. Deciding which state's laws should govern an issue "is a question of law for the

court to decide." *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000)

(citing *Duncan*, 665 S.W.2d at 421). This legal determination necessarily involves a factual

inquiry. *Id.* Accordingly, under Texas choice of law rules, "the party urging application of

another state's substantive law [must] furnish the Court with 'sufficient information' to establish

that the law of another state applies." *Alguire*, 846 F. Supp. 2d at 671 (quoting *Holden v. Capri*

*Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App.—Amarillo 1997, no pet.) (internal quotations

omitted).

Absent such sufficient information, "the failure to provide adequate proof of choice of

law . . . results in a presumption that the law of the foreign jurisdiction is identical to the law of

Texas." *Alguire*, 846 F. Supp. 2d at 671 (quoting *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d

759, 769 (Tex. App.—Corpus Christi 1999, pet. denied) (internal brackets omitted). As this

Court stated in *Alguire*, "[t]hat presumption is especially apposite in the TUFTA context because

the Texas Legislature adopted TUFTA with the specific purpose that it be applied uniformly with

other states' versions of the Uniform Fraudulent Transfer Act [("UFTA")]." *Id.* (citing TEX. BUS.

& COM. CODE § 24.012 (West 2013). "Thus, any differences between TUFTA and another

state's UFTA are likely to be negligible." *Id.* Moreover, when the laws of two states are

substantially the same, this prevents the need to undertake a choice of law analysis. *See Lexxus*

*Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 668 n.17 (N.D. Tex. 2007); *cf. Fraud-Tech, Inc. v.*

*Choicepoint, Inc.*, 102 S.W.3d 366, 377–78 (Tex. App.—Fort Worth 2003, pet. denied) ("Before undertaking a choice of law analysis, we look to whether a conflict of law exists. If no conflict exists on the issues, we need not decide which state's laws govern.").

Both parties cite to a recent order or opinion of this Court in support of their conflicting positions that one state's law should apply instead of the other. Suarez urges observance of this Court's *Reeves-Stanford* Order, where it applied Florida law to a conversion claim in a case where Plaintiff Janvey brought suit. That order is distinguishable, however, because the Court declined to address fraudulent transfer claims that were also alleged in the suit, and a Fifth Circuit case provided substantially similar circumstances to justify the application of Florida law to a conversion claim. *See Reeves-Stanford* Order at 21–22 (citing *Crawford v. Silette*, 608 F.3d 275 (5th Cir. 2010)).

Plaintiffs' attempted invocation of the "law of the case" doctrine is similarly unpersuasive—namely because the doctrine does not apply to the circumstances here. Under the law of the case doctrine, "a decision of a legal issue or issues by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . ." *United States v. Vahlco Corp.*, 895 F.2d 1070, 1072 (5th Cir. 1990). Importantly, this is not the "same case" as the one that Plaintiffs cite to for support. *See, e.g., F.D.I.C. v. McFarland*, 243 F.3d 876, 884 (5th Cir. 2001) (noting that different proceedings must constitute the "same case" for the doctrine to apply); *see also Morris v. SWDI, LLC*, 872 F. Supp. 2d 499, 507 (E.D. La. 2012) (finding "this is *not* the same case—it is only a related case."). Suarez was not a party to the *Alguire* case, and despite the fact that *Alguire* and this case were consolidated for consideration by the same Court, Suarez's absence as a defendant in *Alguire* prevents application of the law of the case doctrine. *See Johnson v. Manhattan Ry.*, 289 U.S. 479,

496–97 (1933) (stating that consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."); *see also United States v. Lawrence*, 179 F.3d 343, 351 (5th Cir. 1999) (finding that "there is no law of the case that binds the instant motion . . . , and the doctrine did not require the district court to reach the same result in considering the respective motions filed by [former co-defendants] in separate proceedings."). This is not to say that *Alguire* is not relevant to the instant case—because the opposite is true—just that it cannot supply the "law of the case" doctrine to non-parties in a different proceeding.

Suarez submits a mere two sentences to factually support her position that Florida law should govern the substantive issues in dispute. *See* Motion to Dismiss (Doc. 13 at 5). This attempt to demonstrate that another state's law should apply arguably proceeds a step further than the arguments presented to the Court in *Alguire*. 846 F. Supp. 2d at 71 (finding that none of the defendants "specifically argue or present evidence that another state's [UFTA] . . . provides the appropriate substantive law."). Nonetheless, at this stage of the proceedings Suarez's minimal factual assertions fail to supply the necessary "sufficient information" for the Court to meaningfully apply the Texas "most significant relationship" methodology to this choice of law situation. Therefore, Suarez's "failure to provide adequate proof of choice of law" subjects her to the "presumption that the law of the foreign jurisdiction is identical to the law of Texas." *Alguire*, 846 F. Supp. 2d at 671 (quoting *Pittsburgh Corning Corp.*, 1 S.W.3d at 769). As a result, the Court should presume that Texas law applies for purposes of analyzing Suarez's Motion to Dismiss and should reserve judgment as a matter of law on this choice of law issue until Suarez can present meaningful factual "sufficient information" to support her contentions.

### III. THE COMPLAINT COMPLIES WITH RULES 12(B)(6) AND 8(A)

Suarez argues the complaint is deficient under Rules 12(b)(6) and 8(a). While it is not controlling under the law of the case doctrine, *Alguire* addressed similar arguments and provides excellent guidance here. *See Alguire*, 846 F. Supp. 2d at 670–77.

### A. Rule 12(b)(6) Standard

In *Alguire*, the Court summarized the Rule 12(b)(6) standard:

> When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). . . .
>
> In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

*Alguire*, 846 F. Supp. 2d at 670.

### B. The TUFTA Claim Satisfies Rule 12(b)(6)

The Complaint sufficiently identifies TUFTA as the "applicable fraudulent transfer law." Complaint (Doc. 12, ¶ 42) ("under applicable fraudulent transfer law . . . . *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 24.013 (Vernon 2009)."); *see generally* TEX. BUS. & COM. CODE ANN. § 24.001, *et seq.*; *see also Alguire*, 846 F. Supp. 2d at 670–71.

The Court has explained that

TUFTA operates to void certain fraudulent "transfers," which the statute defines in relevant part as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money." TEX. BUS. & COM. CODE § 24.002(12). TUFTA considers several types of transfers to be fraudulent. *See id.* §§ 24.005(a) (three types); 24.006 (two types).

*Alguire*, 846 F. Supp. 2d at 670–71.

Here, as in *Alguire*, one of Plaintiffs' claims concerns fraudulent transfers under section 24.005(a)(1) because they allege "Stanford Parties made the payments to Suarez with actual intent to hinder, delay, or defraud Stanford's creditors." Complaint (Doc. 12, ¶ 37); *see id.* at 671 (quoting nearly identical language from the Plaintiffs' *Alguire* Complaint). Regarding this "actual fraud" section of TUFTA, *Alguire* went on to explain that

> Section 24.005(a)(1) provides that a transfer "is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." "In determining [a debtor's] actual intent," courts may consider, "among other factors[,] . . . whether . . . the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred" and if "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." TEX. BUS. & COM. CODE § 24.005(b)(8) & (b)(9). Notably, TUFTA considers a debtor to be insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." *Id.* § 24.003(a).
>
> The Fifth Circuit considers a Ponzi scheme to be, "'as a matter of law, insolvent from its inception.'" *Alguire*, 647 F.3d at 597 (quoting *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006)); *see also Quilling v. Schonsky*, 247 Fed. App'x 583, 586 (5th Cir. 2007) (citation omitted). The Receiver therefore may establish fraudulent intent by showing that the Stanford enterprise operated as a Ponzi scheme. *See Warfield*, 436 F.3d at 558 ("The Receiver's proof that [the debtors] operated as a Ponzi scheme establishe[s] the fraudulent intent behind transfers made by [the Receivership entities]." (citing *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995))); *see also Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.") (citations and internal quotation marks omitted) (alteration in original). . . .
>
> For defendants facing a section 24.005(a)(1) "actual intent" claim, TUFTA provides a statutory defense if the defendants "took in good faith

and for a reasonably equivalent value." TEX. BUS. & COM. CODE §
24.009(a). A transferee invoking this defense has the burden to show both
objective good faith and the exchange of reasonably equivalent value. *See,
e.g., Hahn v. Love*, 321 S.W.3d 517, 526 (Tex. App.—Houston [1st Dist.]
2009, pet. denied) (citations omitted). The transferee's knowledge is
irrelevant to determining whether transfers were made with an intent to
defraud. *See, e.g., Schonsky*, 247 Fed. App'x at 586. Nor does it matter that
the transferee no longer possesses the funds giving rise to the TUFTA claim.
A TUFTA plaintiff seeks to recover "judgment for the value of the asset
transferred," TEX. BUS. & COM. CODE § 24.009(b), not the specific asset
itself, which in many cases left the defendant's possession long ago. Thus,
spending Ponzi scheme proceeds does not shield a recipient of fraudulently-
transferred funds from liability. *See, e.g., Donell*, 533 F.3d at 776 & n. 9
(noting, in case where a receiver brought an UFTA claim against a recipient
of Ponzi scheme funds, that disgorgement may occur "years after the
money has been received and spent" and that such a result is "yet another
common tragic result of a Ponzi scheme").

*Id.* at 672–73 (footnotes omitted).

As in *Alguire*, Plaintiffs here also state a claim for an actual intent fraudulent transfer.

They allege that the Stanford Parties operated a Ponzi scheme, pleading the actual-intent-to-

defraud element necessary to state a claim under section 24.005(a)(1). *See* Complaint (Doc. 12, ¶

37); *see also Alguire*, 846 F. Supp. 2d at 673. Again, as in *Alguire*, Plaintiffs contend that "CD

Proceeds from the Ponzi scheme . . . were transferred by or at the direction of the Stanford

Parties to Suarez[, who] did not provide reasonably equivalent value for the transfers of CD

Proceeds to her and cannot establish that she is a good-faith transferee." Complaint (Doc. 10, ¶

29); *see also Alguire*, 846 F. Supp. 2d at 673. Like the defendants in *Alguire*, Suarez does not

establish that she qualifies for TUFTA's good-faith affirmative defense, and—beyond the statute

of limitations defense discussed below—another defense does not present itself on the

Complaint's face. *See id.; see also Clark v. Amoco Prod. Inc.*, 794 F.2d 967, 970 (5th Cir. 1986)

(noting that a court should grant dismissal under Rule 12(b)(6) "if a successful affirmative

defense appears clearly on the face of the pleadings.") (citations omitted). Accordingly, the Court

should deny Suarez's Rule 12(b)(6) challenge to Plaintiffs' actual intent fraudulent transfer claim, just as it rejected a similar challenge in *Alguire.*

Plaintiffs also state a claim for constructive fraudulent transfer. Section 24.006 of TUFTA applies to constructive fraudulent transfer claims. *See, e.g., In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008) (recognizing that while the name "constructive fraud" does not appear in the statute, "[t]he TUFTA describes one species of 'constructive fraud' in stating that transfers made 'without receiving a reasonably equivalent value' are deemed in fraud of creditors") (citing TEX. BUS. & COM. CODE ANN. § 24.006(a)). To state a claim for a constructive fraud under TUFTA, "a creditor whose claim arose before the allegedly fraudulent transfer at issue must allege that the transfer was made 'without receiving a reasonably equivalent value . . . and the debtor was insolvent at that time.'" *Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 736 (N.D. Tex. 2008) (Godbey, J.) (quoting TEX. BUS. & COM. CODE ANN. § 24.006(a)).

As stated above, Plaintiffs alleged that the Stanford Parties operated a Ponzi scheme, *see* Complaint (Doc. 12, ¶ 37), which the Fifth Circuit considers "as a matter of law, insolvent from its inception.'" *Alguire*, 647 F.3d at 597 (quoting *Warfield*, 436 F.3d at 559). Thus, the Plaintiffs' allegation satisfies the insolvency component of section 24.006(a). Further, the Plaintiffs allege that "CD Proceeds from the Ponzi scheme . . . were transferred by or at the direction of the Stanford Parties to Suarez[, who] did not provide reasonably equivalent value for the transfers of CD Proceeds to her[.]" Complaint (Doc. 12, ¶ 29).[1] The Complaint goes on to explain "[t]here is no evidence that Suarez provided any value—much less reasonably equivalent value—in

---

[1] Plaintiffs present three variations on the allegation that Suarez did not provide reasonably equivalent value for the sums she received: "Suarez either performed no services for the CD Proceeds she received; performed services that did not constitute reasonably equivalent value in exchange for the CD Proceeds she received; or performed only services that were in furtherance of the Ponzi scheme, which cannot be reasonably equivalent value as a matter of law." Complaint (Doc. 12, ¶ 5).

exchange for the fraudulent transfers she received." *Id.* (Doc. 12, ¶ 41). This is because, under

Fifth Circuit jurisprudence, "providing services in furtherance of a Ponzi scheme does not confer

reasonably equivalent value." *Id.* (Doc. 12, ¶ 41) (citing *Warfield*, 436 F.3d at 555, 560).

Plaintiffs conclude that "Suarez cannot now claim that, in return for furthering the Ponzi scheme

and helping it endure, she should be entitled to keep the over $5.1 million in CD Proceeds she

received from the Stanford Parties." *Id.* (Doc. 12, ¶ 41). These allegations satisfy the reasonably

equivalent value requirement of section 24.006(a). Therefore, Plaintiffs also state a claim for

constructive fraud under TUFTA to survive a motion to dismiss. *See Biliouris*, 559 F. Supp. 2d at

736 (finding a complaint sufficient where "Plaintiffs allege specific facts regarding a particular

transfer from [a corporation to a defendant], at a particular time when [the corporation] was

insolvent, and with [the corporation] receiving no—let alone reasonably equivalent—value in

return. Plaintiffs need do no more.").

### C. By Satisfying Rule 12(b)(6), Plaintiffs' TUFTA Claims also Satisfy Rule 8(a)(2)

Suarez objects to the Complaint for failing to comply with Rule 8(a)(2), which requires a

complaint to make "a short and plain statement of the claim showing that the pleader is entitled

to relief." FED. R. CIV. P. 8(a)(2). Suarez attacks the Complaint on the basis that "Plaintiffs' bare,

unsupported allegations are neither well-pleaded, nor plausible," and that the Complaint "fails to

provide 'fair notice of what the claim is and the grounds upon which it rests.'" Motion to

Dismiss (Doc. 13 at 9). However, as described above, Plaintiffs bring TUFTA claims that satisfy

Rule 12(b)(6); they thereby also satisfy Rule 8(a)(2). *See Alguire*, 846 F. Supp. 2d at 675

(Having otherwise complied with Rules 8(a)(1) and 8(a)(3), "the Receiver brings Texas law

claims that satisfy Rule 12(b)(6) . . . . Accordingly, the . . . Complaint satisfies Rule 8(a)'s

pleading requirements."). Therefore, here as in *Alguire*, the Court should deny Suarez's Rule 8(a)(2) challenge to Plaintiffs' Complaint.[2]

As an additional point worth addressing, Suarez challenges Plaintiffs' Complaint as being deficient under Florida's interpretation of its fraudulent transfer laws because "a plaintiff must show that he or she has a 'claim' which qualifies the party as a 'creditor.'" Motion to Dismiss (Doc. 13 at 9) (quoting *In re Wiand*, No. 8:05-CV-1856 T-27-MSS, 2007 WL 963165, at *3 (M.D. Fla. Mar. 27, 2007) (citing *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004)). Although, as discussed above, Suarez has not provided sufficient information to convince the Court of Florida law's applicability, a recent Fifth Circuit case also involving Plaintiff Janvey's receivership over the Stanford Entities makes Suarez's contention worthy of the Court's attention.

In *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185 (5th Cir. 2013), the court addressed the issue of whether Plaintiff Janvey, in his capacity as receiver, had standing to assert "the claims of investor-creditors of the [Stanford] corporations in receivership, rather than the claims of the corporations themselves . . . ." *Id.* at 190. The court concluded that "a federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors . . . ." *Id.* In support of its decision, the Fifth Circuit cited to *In re Wiand* in determining "[this] rationale . . . which allows a federal equity receiver to assert the claims of a receivership entity against third-party recipients of the entity's assets that have been fraudulently transferred by the principal of the Ponzi scheme has been endorsed by this court [and many other federal courts]." *Id.* at 191 & n.5 (citing *In re Wiand*, 2007 WL 963165, at *2).

---

[2] Plaintiffs also should not be required to replead because the "elements" of each cause of action are present, well-pleaded, and give Suarez adequate notice to prepare her defense. *See Alguire*, F. Supp. 2d at 675 n.11.

While standing is not contested here, *Democratic Senatorial Campaign* establishes that Plaintiffs' claims are being asserted on behalf of the corporations and entities in receivership. Thus the Plaintiffs, on behalf of the receivership entities, act as creditors in this context by bringing claims for equitable disgorgement of the receivership estate's former assets that were allegedly transferred in a fraudulent setting to Suarez, who holds the role of a debtor in this context. The definitions under TUFTA solidify this conclusion. Under TUFTA, a "creditor" simply means a "'person' . . . who has a claim." TEX. BUS. & COM. CODE ANN. § 24.002(4) (West 2013). In turn, a "person" is defined as "an individual, partnership, corporation, association, organization, government or governmental subdivision or agency, business trust, estate, trust, or any other legal or commercial entity." *Id.* § 24.002(9). This broad definition of a person captures Plaintiffs' roles as a Receiver and an organization acting on behalf of those that form the receivership estate, which makes Plaintiffs creditors for TUFTA purposes. Further, Plaintiffs' allegations in the Complaint constitute TUFTA "claims" because the term is defined as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). Finally, Suarez is alleged to be "a person who is liable on a claim," which satisfies TUFTA's definition of a "debtor." *Id.* § 24.002(6).

Applying these definitions to the allegations in the Complaint, Suarez's assertion that Plaintiffs have failed "to plead the requisite 'debtor,' 'creditor[,]' and 'claim' elements of a FUFTA [or TUFTA] claim" must fail.[3] The Complaint lists all of the entities under Plaintiff Janvey's receivership. Complaint (Doc. 12, ¶ 13). Importantly, the list expressly informs Suarez

---

[3] The definitions of the terms "claim," "creditor," "debtor," and "person" are identical under both TUFTA and FUFTA. *Compare* TEX. BUS. & COM. CODE ANN. § 24.002 (West 2013), *with* FLA. STAT. ANN. § 726.102 (West 2013).

that Stanford International Bank, Ltd. ("SIB") is a member of this group. The Complaint describes the Stanford Ponzi scheme and depicts how marketing fraudulent SIB CDs played a central role in the scheme. *Id.* (Doc. 12, ¶¶ 17–28). While SIB allegedly sold the CDs, Stanford Group Company financial advisors purportedly marketed the CDs "pursuant to a Regulation D private placement." *Id.* (Doc. 12, ¶ 17) (citing SEC's Second Amended Complaint (Doc. 952, ¶ 27). The Complaint alleges that Suarez "was the Chief of Staff of Stanford Financial Group Company and was the Secretary and a member of the board of directors for Stanford Group Holdings, Inc.—two of the many Stanford Parties involved in the Ponzi scheme." *Id.* (Doc. 12, ¶ 3). The Complaint alleges that these Stanford Parties were responsible for transferring CD proceeds to Suarez, (Doc. 12, ¶ 29), and an appendix to the Complaint lists that these proceed transfers arrived in the form of regular earnings, quarterly bonuses, vacation pay, a semi-annual bonus, CD proceeds from Suarez's own CDs, expense reimbursement payments, other miscellaneous pay, and Toronto dominion wires. (Doc. 12, ¶ 31). Therefore, Plaintiff's have sufficiently pleaded the requisite "debtor," "creditor," and "claim" elements to state valid claims under TUFTA.

### D. Plaintiffs state a claim for the equitable remedy of unjust enrichment under Texas law

In *Alguire*, this Court also considered a motion to dismiss a claim for relief based on the doctrine of unjust enrichment. *See Alguire*, 846 F. Supp. 2d at 673–75. There, the Court described the legal theory of unjust enrichment under Texas law as follows:

> "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits," regardless of whether the defendant engaged in wrongdoing. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied) (citations omitted). "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id.* (citation omitted). "A party may recover under the unjust enrichment theory when one person has obtained a

benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted).

*Alguire*, 846 F. Supp. 2d at 673.

The Court's explanation went on to discuss a possible conflict among Texas courts concerning the recognition of an unjust enrichment claim as an independent cause of action or whether a plaintiff must instead rely on an equitable common law claim for money had and received. *Id.* at 673–74. After examining Texas authority on both sides of the supposed split, the Court concluded that both claims were substantively identical, and it held "[r]egardless of whether Texas law allows an 'unjust enrichment' claim or requires pleading a claim for money had and received, the Receiver states claims under either 'applicable law.'" *Id.* at 674. The Court based its conclusion on the concept that Receiver Janvey's claims, taken together, alleged "the Employee Defendants obtained a benefit from the Stanford Defendants' scheme that equity dictates they cannot retain justly." *Id.* at 675.

Just as in *Alguire*, Plaintiffs here present an alternative claim that they are entitled to "to disgorgement of the CD Proceeds . . . pursuant to the doctrine of unjust enrichment under applicable law." Complaint (Doc. 12, ¶ 46). In other similarity to *Alguire*, this claim is also brought against a former employee of the Stanford Defendants who is alleged to have acted in "furthering the Ponzi scheme and helping it endure . . . ." *Id.* (Doc. 12, ¶ 41). Like the defendants in *Alguire*, Suarez is confronted with an allegation that she received compensation in the form of CD proceeds that stemmed from funds contributed by defrauded investors. *Compare* Complaint (Doc. 12, ¶ 38) (alleging "[t]he Stanford Parties were running a Ponzi scheme and paid Suarez with funds taken from unwitting SIB CD investors."), *with Alguire*, 846 F. Supp. 2d at 673 (quoting a complaint where the Receiver alleged "CD Proceeds paid to the [Employee

Defendants] came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors."). Plaintiffs contend "it would be unconscionable for [Saurez] to retain the funds" she received because those funds "in equity and good conscience belong to the Receivership Estate for ultimate distribution to the defrauded investors." Complaint (Doc. 12, ¶ 46). Plaintiffs therefore seek relief of "complete and exclusive control, possession, and custody of the CD Proceeds received by Suarez." *Id.* (Doc. 12, ¶ 47).

In sum, these contentions "allege that [Suarez] obtained a benefit from the Stanford Defendants' scheme that equity dictates [she] cannot retain justly." *See Alguire*, 846 F. Supp. 2d at 675. Based on the many similarities in the allegations in this case and those in *Alguire*, it is likewise recommended that the Court decline to dismiss Plaintiffs' unjust enrichment claim.

### IV. THE COMPLAINT COMPLIES WITH RULE 9(b)

Suarez contends that Plaintiffs' fraudulent transfer and unjust enrichment claims are subject to FED. R. CIV. P. 9(b), and fail to comply with the heightened pleading requirements under that rule. Motion to Dismiss (Doc. 13 at 6). Suarez relies on Florida law in support of her position but in doing so she fails to direct the Court's attention to any controlling Fifth Circuit case law in support of her legal argument.

Regarding the applicability of Rule 9(b) to fraudulent transfer claims under TUFTA, once again Suarez's position bears many similarities to the stance taken by the *Alguire* defendants. There, the court stated that

> The [defendants] provide no controlling Fifth Circuit authority that applies a heightened pleading requirement to TUFTA claims. The issue appears to be an open question in the Fifth and some other circuits. *See, e.g.*, *Biliouris*, 559 F. Supp. 2d at 736 (noting that the Fifth Circuit has not addressed the effect of Rule 9(b) on TUFTA claims (citing *Quilling v. Stark*, 2006 WL 1683442, at *5 (N.D. Tex. 2006) (Lindsay, J.))); *Wing v. Horn*, 2009 WL 2843342, at *3 (D. Utah 2009) (noting that "[t]he applicability of Rule 9(b) to UFTA claims [was] an issue of first impression in the Tenth Circuit"). The courts that have considered the

matter have arrived at different conclusions, often by drawing a distinction
between intentional and constructive fraudulent transfer claims. *See, e.g., Kranz v.
Koenig*, 240 F.R.D. 453, 455–56 (D. Minn. 2007) (collecting cases).

"[T]he Court can find no principled reason for applying Rule 9's pleading
requirements to . . . the Receiver's fraudulent transfer claims" for the same
reasons given by the *Wing* Court. *Wing*, 2009 WL 2843342, at *5. In the
fraudulent transfer context

> [t]here is no allegation that the [d]efendant committed any act of fraud;
> indeed, the defendant's conduct is simply not an element of the Receiver's
> claim. Furthermore, the Court finds that the distinction between intentional
> fraudulent transfer and constructive fraudulent transfer claims drawn by
> other courts addressing the applicability of Rule 9 to fraudulent transfer
> cases is not helpful in Ponzi scheme cases in which "actual intent" can be
> inferred by virtue of the transferor's insolvency as a matter of law. Finally,
> the Court finds that this inference of fraudulent intent applies to all transfers
> from a Ponzi scheme, regardless of the defendant's characterization of them
> as ordinary business transactions.

*Id.*

This conclusion comports with a fairly recent Northern District of Texas
TUFTA case. *See GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, 2009
WL 5173954, at *10 (N.D. Tex. 2009) (Lindsay, J.) ("[Plaintiffs have] not alleged
*fraud* against PlainsCapital or Moving Defendants, which is the contemplation of
Rule 9(b). Plaintiffs have merely alleged that Moving Defendants were the
recipient of funds fraudulently obtained. Nothing in the complaint or record
indicates that Moving Defendants committed any fraudulent act that caused the
funds to be transferred.") (emphasis in original). Indeed, it aligns with several
recent cases involving other states' UFTAs. Accordingly, the Receiver's TUFTA
claim need not satisfy Rule 9(b).

*Alguire*, 846 F. Supp. 2d at 675–77 (footnotes omitted). In *Alguire*, the Court further found that

even if the Complaint was required to satisfy Rule 9(b), it would have done so, by alleging

"fraud with sufficient particularity to avoid dismissal." *Id.* at 677. As in *Alguire*, Plaintiffs have

provided Suarez with "sufficient notice of the time period in which [they] believe[ ] the transfer

of fraudulently-obtained funds occurred." *Id.* Further, here as in *Alguire*,

> [a]ssuming, as the Court must that the factual allegations in the [Plaintiffs']
> Complaint are true: The Stanford Defendants operated a Ponzi scheme that
> [Suarez] furthered. Because the scheme had few, if any, business components
> untouched by the sale of fraudulent investment vehicles, [Suarez] necessarily
> received compensation in the form of funds derived from unsuspecting investors'

cash infusions into the Ponzi scheme. This makes [Suarez's] compensation assets that are potentially traceable to the Receivership Estate. [Plaintiffs] assert[ ] that [Suarez] therefore holds and controls—or previously disposed of—proceeds that are traceable to the Receivership Estate. And, [Plaintiffs] identify the specific amount of CD Proceeds related compensation [Suarez allegedly received, and have therefore] apprised [Suarez] of a sufficiently "substantial amount of particularized information about [their] claim in order to enable [Suarez] to understand it and effectively prepare a responsive pleading and an overall defense of the action [ ]." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1296 at 39 (3d ed. 2004).

*Id.* (footnotes omitted). Therefore, here as in *Alguire,* the Court should deny Suarez's Rule 9(b) challenge to Plaintiffs' TUFTA claims presented in the Complaint.[4]

*Alguire* is also dispositive of Suarez's contention that Plaintiffs' unjust enrichment claims should be dismissed under Rule 9(b). Suarez objects that Plaintiffs' "Complaint contains no facts supporting any of [the elements of a fraudulent transfer claim under Florida law]." Motion to Dismiss (Doc. 13 at 9). In *Alguire*, the Court stated that an unjust enrichment claim does not depend upon a defendant

> having engaged in fraudulent conduct and instead focuses simply on whether [Defendant] received a benefit that would be unconscionable to retain. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied) Even if Rule 9(b) applies to the unjust enrichment claim, [Plaintiffs'] Complaint adequately states facts alleging the "who, what, when, where, why, and how" supporting [Plaintiffs'] belief that allowing [Defendant] to retain the identified forms of CD Proceeds would constitute the "obtain[ing] of a benefit from another by . . . the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

*Id.* at 677, n. 15. Accordingly, the Court should deny Suarez's motion to dismiss Plaintiffs'

---

[4] As an illustration of the uniformity among the states enacting UFTA, application of Florida law would likely render the same result. *See Perlman v. Five Corners Investors I, LLC*, 2010 WL 962953, at *4 (S.D. Fla. 2010); *Pearlman v. Alexis*, 2009 WL 3161830, at *5–6 (S.D. Fla. 2009) (holding that Rule 9(b) does not apply to FUFTA claims, reasoning that such claims are "different than the fraud claims to which Rule 9(a) would normally apply" because they "involve [ ] a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity"); *Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, 2008 WL 660100, at *6 (S.D. Fla. 2008) (same).

unjust enrichment claim on Rule 9(b) grounds as well.

### V. TIMELINESS OF THE COMPLAINT UNDER THE RELEVANT STATUTES OF LIMITATIONS

Relying on Florida law, Suarez seeks dismissal of Plaintiffs' fraudulent transfer and unjust enrichment claims as either time-barred or partially time-barred. Motion to Dismiss (Doc. 13 at 10–13). Suarez fixes her attention on the date of December 17, 2010 for purposes of her argument, and both sides agree that is the date this action was filed. Motion to Dismiss (Doc. 13 at 12); Plaintiffs' Response (Doc. 14, ¶ 20). Other relevant dates for the Court to consider are February 16, 2009, the date Plaintiff Janvey was appointed as Receiver, and August 10, 2010, the date Plaintiff OSIC was formed. *See* Plaintiffs' Response (Doc. 14, ¶ 20). Although Suarez again relies on Florida law to support her position, she has yet to provide sufficient information (as discussed above) to demonstrate the applicability of Florida law. Hence, her limitations arguments will be addressed under Texas law and Fifth Circuit jurisprudence, bearing in mind the substantial similarities between TUFTA and FUFTA. When applying Texas substantive law, as the aforementioned presumption here requires, "there is no question . . . that Texas courts would apply their own state's statute of limitations." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 142 (5th Cir. 2007) (quoting *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1112 (5th Cir. 1981)).

Within the Fifth Circuit, it is well-settled that "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). "Failure to file an action within the time period provided for in the statute of limitations is an affirmative defense, FED. R. CIV. P. 8(c), and may be raised by a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FED. R.

CIV. P. 12(b)(6)." *Neel v. Rehberg*, 577 F.2d 262, 264 (5th Cir. 1978). Where a defendant utilizes Rule 12(b)(6) to seek dismissal based on an affirmative defense "dismissal should not be granted unless the defense is established by the face of the complaint." *Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 669 (N.D. Tex. 2007) (Lindsay, J.) (quoting *Hannover Life Reassurance Co. of Am. v. Baker, Lowe, Fox Ins. Mktg., Inc.*, No. 3:01-CV-0597-D, 2001 WL 1586874, at *7 n. 10 (N.D. Tex. Dec. 10, 2001) (Fitzwater, J.)).

For reasons explained in greater detail below, it is necessary to analyze the limitations periods for Plaintiffs' actual and constructive fraudulent transfer claims separately. In general terms, however, the thrust of Suarez's argument is that "fraudulent transfer claims must be brought within four years from the date of the transfer or such claims are extinguished and no longer exist." Motion to Dismiss (Doc. 13 at 10). Because Plaintiffs allege that some transfers were made to Suarez prior to December 17, 2006, in Suarez's view these transfers (totaling $433,500.00) are completely time-barred as falling outside of FUFTA's four-year limitations period. *Id.* (Doc. 13 at 11). Further, because the face of Plaintiffs' Complaint categorizes and groups certain transfers within approximate date ranges—i.e., claiming Suarez received $898,951.19 in CD proceeds from her own CDs at unspecified times between December 12, 2003 and December 29, 2008—Suarez argues that these transfer groupings are partially time-barred. *Id.* (Doc. 13 at 11–12). For these partially time-barred transfer groupings, Suarez seeks dismissal of these claims in full and that the Court require Plaintiffs "to replead with specificity the dates of the transfers so it can be determined which transfers occurred prior to [the limitations period]." *Id.* (Doc. 13 at 12, n.3).

### A. The actual intent fraudulent transfer claim is timely under TUFTA's one-year discovery rule

Suarez recognizes that actual intent fraudulent transfer claims are subject to a one-year

discovery period, which she believes began to run on February 16, 2009, the date Plaintiff

Janvey was appointed as Receiver. Motion to Dismiss (Doc. 13 at 12). In Suarez's view,

"Stanford's books and records clearly show the existence of such transfers and the Plaintiffs

cannot plausibly argue that they could not have reasonably discovered the transfers before

February 15, 2010." *Id.* (Doc. 13 at 12). As a result, according to Suarez "the Complaint is

devoid of factual allegations necessary to demonstrate that Plaintiffs' fraudulent transfer claims

are not time-barred." *Id.* (Doc. 13 at 13).

Suarez's argument to dismiss Plaintiffs' actual intent fraudulent transfer claim is

foreclosed by *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185 (5th Cir.

2013). There, defendants' motion for summary judgment offered a similar argument that the

discovery period expired exactly one year after Plaintiff Janvey's appointment as Receiver on

February 16, 2009. *Id.* at 193. The court rejected this argument and found that "Under

TUFTA . . , a fraudulent-conveyance claim does not accrue until the claimant knew or

reasonably could have known both of the transfer and that it was fraudulent in nature." *Id.* The

court further explained

> Under TUFTA, a fraudulent-transfer claim is "extinguished" if not brought
> "within four years after the transfer was made . . . or, if later, within one year after
> the transfer . . . was or could reasonably have been discovered by the claimant."
> TEX. BUS. & COM. CODE § 24.010(a)(1). With respect to the latter portion of the
> statute, the discovery rule, Texas courts of appeals have held that section
> 24.010(a)(1) requires that a fraudulent-transfer claim be filed within one year of
> when the *fraudulent nature* of the transfer was or reasonably could have been
> discovered. *See, e.g., Duran v. Henderson*, 71 S.W.3d 833, 839 (Tex. App.—
> Texarkana 2002, pet. denied). In other words, "[when] all the elements of the
> cause of action for fraud are discovered or should have been discovered," the
> cause of action will accrue. *See Freitag v. McGhie*, 947 P.2d 1186, 1190 (1997)
> (interpreting Washington's UFTA); *accord Duran*, 71 S.W.3d at 839; *see also*
> TEX. BUS. & COM. CODE § 24.012 ("[TUFTA] shall be applied and construed to
> effectuate its general purpose to make uniform the law with respect to the subject
> of [TUFTA] *among states enacting it.*") (emphasis added). Therefore, under
> Texas appeals-courts decisions, the limitations period does not begin to run upon

the discovery of *the transfer* alone. Instead, a claim under section 24.005(a)(1) of TUFTA has been held to accrue only when the claimant discovers or reasonably could have discovered the fraudulent nature of the conveyance. *See Duran*, 71 S.W.3d at 839. As the *Duran* court explained, "[t]he discovery rule provides that a claim for fraud does not accrue, and thus the limitation period does not begin to run, until *the fraud* is discovered, or in the exercise of reasonable diligence should have been discovered." *Id.* (emphasis added). Nor is this unique to TUFTA; rather, the majority of jurisdictions that have addressed the issue have similarly interpreted the same UFTA provision. For example, in *State Farm Mutual Automobile Insurance Co. v. Cordua*, the court surveyed cases interpreting UFTA's discovery rule—including *Duran v. Henderson*—and concluded that "the majority of other jurisdictions have consistently held that the one-year savings provision does not begin to accrue until the creditor discovers or could have reasonably discovered the nature of the fraudulent transfer." 834 F. Supp. 2d 301, 307 (E.D. Pa. 2011).

*Id.* at 194–95 (emphasis in original and footnote omitted). Based upon the above authorities, the court made an *Erie* guess "that the Texas Supreme Court would conclude that section 24.010(a)(1) of TUFTA requires that a fraudulent-transfer claim must be filed within one year after the fraudulent nature of the transfer is discovered or reasonably could have been discovered." *Id.* at 195.

The face of the Complaint alleges Plaintiff Janvey was able to discover the transfers at issue only "after R. Allen Stanford and his accomplices were removed from control of the Stanford entities and after a time-consuming and extensive review of thousands upon thousands of paper and electronic documents relating to the Stanford entities." Complaint (Doc. 12, ¶¶ 7 & 44). They also pleaded that Plaintiff OSIC "could not have been aware of any of the transactions involving CD Proceeds paid to Suarez until after its formation on August 10, 2010, at the earliest." *Id.* (Doc. 12, ¶ 44). Plaintiffs state the Stanford Defendants took steps to conceal their fraud and "SIB's accountants reverse-engineered the Bank's financial statements to reflect investment income that SIB did not actually earn." *Id.* (Doc. 12, ¶¶ 25–26). Plaintiffs conclude

by pleading "the discovery rule and equitable tolling principles apply to any applicable limitations period." (Doc. 12, ¶ 44).

According to *Democratic Senatorial Campaign*, mere access to available information cannot support Suarez's argument that Plaintiffs reasonably could have discovered the fraudulent transfers—thus triggering the discovery period—particularly when the information rises to the complexity present in this case. *See Democratic Senatorial Campaign*, 712 F.3d at 196 n.10. Here, just as in *Democratic Senatorial Campaign*, "[t]he crucial issue is when [Plaintiff Janvey] knew or could reasonably have known of the fraudulent nature of the transfers, not simply when he knew or could reasonably have known that the transfers had been made." *Id.* The Plaintiffs plead facts to invoke application of the discovery rule to their actual intent fraudulent transfer claim under TEX. BUS. & COM. CODE § 24.010(a)(1), and Suarez fails to demonstrate from the face of their Complaint that any facts support the affirmative defense that this one-year period had expired before the action commenced.

Therefore, Plaintiffs actual intent fraudulent transfer claim should not be dismissed as either time-barred or partially time-barred because the face of the Complaint demonstrates compliance with the one-year discovery rule of section 24.010(a)(1).

### B. Portions of Plaintiffs constructive fraud claim are untimely under TUFTA

Plaintiffs' constructive fraud claim brought under TEX. BUS. & COM. CODE ANN. § 24.006(a)—that Suarez received CD proceeds while the Stanford Parties were insolvent and did not provide reasonably equivalent value in return—is another matter. Importantly, *Democratic Senatorial Campaign* did not address claims for constructive fraud in its discussion of TUFTA's discovery rule. *See id.* at 194 n.7. Therefore, other cases from Texas courts of appeal guide the application of the limitations period for constructive fraud claims under TUFTA.

Section 24.010(a)(2) of TUFTA expressly references constructive fraud claims brought under section 24.006(a), and states that such an action is extinguished unless it is brought "within four years after the transfer was made or the obligation was incurred." TEX. BUS. & COM. CODE ANN. § 24.010(a)(2). Unlike the preceding subsection (a)(1), which only references actual intent fraud claims brought under section 24.005(a)(1), section 24.010(a)(2) does not include a one-year discovery rule. *See id.* In comparing these two subsections of section 24.010, one Texas court of appeals has concluded "[f]or the latter type of transfers [in section 24.010(a)(2) that applies to constructive fraud claims], the legislature provided no discovery rule." *Johnston v. Crook*, 93 S.W.3d 263, 270 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *accord Walker v. Anderson*, 232 S.W.3d 899, 909 (Tex. App.—Dallas 2007, no pet.) (discussing claims brought under sections 24.005(a)(1) and .006(a) and finding "Section 24.010 treats each of these sections differently . . . ."). *Johnston* concluded "[i]n short, the UFTA specifically acknowledges the availability of the discovery rule to cases of transfers made with actual intent to defraud." *Id.* at 270. The court in *Walker v. Anderson*, echoed this conclusion when it found TUFTA's one-year discovery rule "is unique to section 24.005(a)(1)." *Walker*, 232 S.W.3d at 909.

It is therefore apparent that Plaintiffs' pleading of facts to invoke the discovery rule has no application to their constructive fraud claim under TUFTA's statute of limitations. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Cordua*, 834 F. Supp. 2d 301, 305 (E.D. Pa. 2011) (addressing another state's UFTA and concluding "[t]he relevant provision for constructive fraud claims expressly provides for extinguishment of an action when the transfer was made, not when it was discovered."). Such pleading only benefits Plaintiffs' claim for relief under the actual intent prong of TUFTA. *See Walker*, 232 S.W.3d at 909. Because Plaintiffs commenced this action on December 17, 2010, Suarez is correct that December 17, 2006, represents the appropriate

triggering date for the limitations period—but only with respect to Plaintiffs' constructive fraud claim governed by section 24.006. *See In re Supplement Spot, LLC*, 409 B.R. 187, 197 (Bankr. S.D. Tex. 2009) (applying a four-year limitations period to a claim brought under section 24.006).

Suarez identifies specific transfers totaling $433,500.00 where Plaintiffs list dates of transfer occurring prior to December 17, 2006. Motion to Dismiss (Doc. 13 at 11). The specified sums include nine transfers categorized as "Regular Earnings" in the amount of $12,500.00 each; one transfer categorized as "Quarterly Bonus" in the amount of $300,000.00; and seven transfers categorized as "Other Toronto Dominion Wires" in varied amounts. *Id.* (Doc. 13 at 11). On the face of Plaintiffs' Complaint, the dates listed for these transfers support Suarez's affirmative defense of limitations because they occurred outside of the four-year limitations period for a constructive fraud claim under TUFTA. *See* TEX. BUS. & COM. CODE ANN. § 24.010(a)(2). Therefore, these specified transfers are each time-barred, and should be extinguished only with respect to Plaintiffs' constructive fraud claim.

In addition, as noted above, Plaintiffs group certain transfers together and assign those groups date ranges representing periods where multiple transfers occurred. These groupings entail a sum of $898,951.19 categorized as "CD Proceeds from Suarez's CDs" that Suarez received between December 5, 2003, and December 29, 2008; a sum of $549,937.58 categorized as "Expenses" that Suarez received between April 6, 2009, and January 26, 2009; and a sum of $11,273.46 categorized as "Other Pay" that Suarez received between April 6, 2009, and January 26, 2009. Complaint (Doc. 12, Appendix at 2). On the face of the Complaint, these groupings reflect that Suarez received unspecified transfers prior to December 17, 2006, and therefore portions of these groupings are partially time-barred as applied to Plaintiffs' constructive fraud claim. Any transfers included in these groupings that occurred prior to December 17, 2006, fall

27

outside of section 24.010(a)(2)'s four-year limitations period and the Court should dismiss these amounts with respect to Plaintiffs' claim for constructive fraud. Plaintiffs should be afforded the opportunity to amend their constructive fraud claim in the Complaint concerning the transfers categorized as "CD Proceeds from Suarez's CDs," "Expenses," and "Other Pay" to reflect only the amounts Suarez allegedly received after December 17, 2006.[5]

A final point bears discussion because Plaintiffs also plead "equitable tolling principles apply to any applicable limitations period." Complaint (Doc. 12, ¶ 44). Plaintiffs' Complaint cites two cases to support their theory of equitable tolling. *Id.* (Doc. 12, ¶ 44) (citing *Wing v. Kendrick*, No. 08-CV-01002, 2009 WL 1362383, at *3 (D. Utah May 14, 2009); *Quilling v. Cristell*, No. 304-CV-252, 2006 WL 316981, at *6 (W.D.N.C. Feb. 29, 2006). Plaintiffs' Response to Suarez's Motion to Dismiss simply quotes the Complaint's statement that equitable tolling principles apply without providing any other authority, and Plaintiffs dedicate their argument to application of the discovery rule under section 24.010(a)(1). *See* Plaintiff's Response (Doc. 14, ¶¶ 19–22). Notably, the two cases cited in the Complaint similarly addressed arguments of equitable tolling principles in the context of various states' UFTA provisions as applied to actual intent fraud claims. In short, Plaintiffs have not directed the Court's attention to any authorities supporting a position that equitable tolling principles apply to a UFTA

---

[5] This result, of Plaintiffs amending their Complaint to reflect transfers within the applicable limitations period, comports with the requested relief Suarez seeks. Motion to Dismiss (Doc. 13 at 12 n.3). Furthermore, Plaintiffs should only be required to replead with respect to their constructive fraud claim. As discussed before in detail, all amounts listed in the three groupings at issue should not be disturbed with respect to Plaintiffs' actual intent fraudulent transfer claim because a different limitations period applies to that claim via section 24.010(a)(1)'s discovery rule. *See Walker*, 232 S.W.3d at 909 (stating "when . . . claims brought pursuant to [section 24.006] are extinguished under section 24.010(a)(2) . . . it does not necessarily follow that claims brought pursuant to section 24.005(a)(1) are extinguished under section 24.010(a)(1) because the additional provision [of the discovery rule].").

constructive fraud claim where the statute does not provide an additional one-year discovery rule like its actual intent fraud counterpart.

This Court is aware of equitable tolling principles—such as the common law doctrine of adverse domination—that may act to toll a statute of limitations. *See Janvey v. Democratic Senatorial Campaign Comm.*, 793 F. Supp. 2d 825, 832–35 (N.D. Tex. 2011) (discussing equitable tolling principles and the application of TUFTA's statute of limitations) *aff'd sub nom. Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 699 F.3d 848 (5th Cir. 2012) *opinion withdrawn and superseded*, 712 F.3d 185 (5th Cir. 2013). There, however, the Court's analysis was underscored by the applicability of section 24.010(a)(1)'s discovery rule, and the limitations period for a constructive fraud claim under section 24.010(a)(2) was not at issue and was not discussed. *Democratic Senatorial Campaign Comm.*, 793 F. Supp. 2d at 832–35. On appeal, the Fifth Circuit likewise did not address constructive fraud claims or the application of section 24.010(a)(2) to equitable tolling principles. *Democratic Senatorial Campaign Comm.*, 712 F.3d at 194 n.7.

At best, it is unclear whether equitable tolling principles would apply to TUFTA's limitations period for actual intent fraud claims under section 24.010(a)(1), *see Democratic Senatorial Campaign Comm.*, 793 F. Supp. 2d at 832–35, much less whether equitable tolling would apply to the limitations period for constructive fraud claims under section 24.010(a)(2) that does not incorporate a discovery period into the statute.[6] In any event, outside of pleading

---

[6] On the contrary, if Florida law and Florida federal courts' interpretation of FUFTA applied, resolving whether equitable tolling applied to a constructive fraud claim would be more certain because courts there have found the doctrine inapplicable. *See, e.g., Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 806780, at *8 (S.D. Fla. Mar. 26, 2009) (concluding "[t]he doctrine of equitable tolling may not be applied to Counts II and III under FUFTA because the constructive fraudulent transfer provisions of FUFTA make no allowances for tolling based on the plaintiff's discovery of the transfer."); *see also Wiand v. Dewane*, No. 8:10-CV-246-T-17MAP, 2011 WL 4460095, at *5 (M.D. Fla. July 11, 2011) *report and recommendation*

facts to demonstrate the applicability of section 24.010(a)(1)'s discovery rule, Plaintiffs do not indicate what theory of equitable tolling they are relying on nor do they discuss how such a theory would interact with the limitations period capturing claims for constructive fraud under section 24.010(a)(2).[7] This omission comports with the above recommendation that portions of Plaintiffs' constructive fraud claims fall beyond the applicable limitations period under section 24.010(a)(2) and warrant dismissal because the constructive fraud pleadings "fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

### C. Plaintiffs' unjust enrichment claim is timely

Finally, Suarez contends Plaintiffs' unjust enrichment claims are also subject to a four-year limitations period under Florida law. Motion to Dismiss (Doc. 13 at 12). According to her, "[t]his limitations period has no equitable tolling or delayed discovery feature [and] the claim accrues when the benefit is conferred." *Id.* (Doc. 13 at 12) (citing *Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 806780, at *10 (S.D. Fla. March 26, 2009).

Plaintiffs counter that Texas applies a two-year limitations period for unjust enrichment claims. Plaintiffs' Response (Doc. 14, ¶ 21) (citing *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004). Further, Plaintiffs state "this Court has already ruled that the discovery rule applies to Plaintiffs' claims" and the statute of limitations did not begin to run until sometime

---

*adopted*, No. 8:10-CV-246-T-17MAP, 2011 WL 4459811 (M.D. Fla. Sept. 26, 2011) (refusing to read the omitted discovery rule into the limitations period for constructive fraud claims and declining to apply equitable tolling to constructive fraud claims on the basis of legislative intent).

[7] In fact, Plaintiffs fail to cite to section 24.010(a)(2) altogether. Plaintiff's responsive brief correctly identifies that section 24.006(a) controls their constructive fraud claim when discussing the relevant pleading standards. *See* Plaintiff's Response (Doc. 14, ¶¶ 15–16). Their limitations argument contends only for the application of section 24.010(a)(1), which by its own language refers to section 24.005(a)(1) and not section 24.006(a). *See* Plaintiff's Response (Doc. 14, ¶¶ 19–22).

after February 16, 2009, which fell within two years of when this action commenced on December 17, 2010. *Id.* (Doc. 14, ¶ 21).

According to the Texas Supreme Court, "absent application of the discovery rule . . . a two-year statute would bar [a] claim for unjust enrichment." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (citation omitted). The court in *HECI Exploration* when on to state that "[t]he discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Id.* at 886.[8] Texas's recognition of the discovery rule's applicability to an unjust enrichment claim is important because where a "Plaintiff has invoked the discovery rule, and [where a] Plaintiff's complaint at least plausibly sets out facts where the discovery rule might apply, the Court cannot resolve that issue in the context of [a] Motion to Dismiss." *Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 707–08 (N.D. Tex. 2011).

"Texas follows the 'legal injury' test, under which '[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy.'" *Mayo*, 354 F.3d at 410 (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)). Deferring accrual in cases involving fraud or fraudulent concealment is premised on the idea that "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *R.V.*, 933 S.W.2d at 6. Texas courts have stated "[f]raud . . . in and of itself prevents running of the statute of limitations . . . as does fraudulent concealment." *Id.* (citing *Ruebeck v.*

---

[8] Deferring the accrual of a limitations period is distinct from tolling a limitations period once it has commenced. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994)).

*Hunt*, 176 S.W.2d 738, 739 (Tex. 1943) (stating "[i]t is the well-settled rule in this State that

fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of

reasonable diligence it might have been discovered.")). Special relationships between plaintiff

and defendant, such as attorney and client or trustee and beneficiary, may also necessitate

delaying the accrual of a limitations period. *See id.* (citations omitted).

Texas's two-year limitations period applies to Plaintiffs' unjust enrichment claim, and the

face of their Complaint demonstrates that the claim did not accrue until sometime after Plaintiff

Janvey's appointment as Receiver on February 16, 2009. Though determining exactly when an

unjust enrichment claim accrued is a question for a fact finder to decide, *see USPPS, Ltd. v.*

*Avery Dennison Corp.*, 326 Fed. App'x 842, 850–51 (5th Cir. 2009), Plaintiffs brought their

claim on December 17, 2010, which fell within the two-year period. The Complaint also pleads

the applicability of Texas's discovery rule as applied to an unjust enrichment claim, which shifts

the date of the "legal injury" from the time the wrongful action occurred to the time when

"[Plaintiffs] knew or, exercising reasonable diligence, should have known of the facts giving rise

to a cause of action." *HECI Exploration Co.*, 982 S.W.2d at 886. Because the Receiver did not

come into existence until February 2009, he could not have discovered the facts giving rise to an

unjust enrichment claim before that time. Further, knowledge of any wrongful conduct cannot be

imputed on the Stanford entities that Plaintiff Janvey represents because they were under the

coercion and control of the Stanford Defendants at the time the wrongful conduct giving rise to

the unjust enrichment claim occurred. *See Janvey v. Democratic Senatorial Campaign Comm.,*

*Inc.*, 712 F.3d 185, 193 (5th Cir. 2013). Finally, the Complaint alleges the Stanford Defendants

took steps to conceal their fraud and "SIB's accountants reverse-engineered the Bank's financial

statements to reflect investment income that SIB did not actually earn." (Doc. 12, ¶¶ 25–26). As

the Texas Supreme Court has stated, allegations of fraudulent concealment avails Plaintiffs to the benefit of the concept that "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *R.V.*, 933 S.W.2d at 6.

As a result, Plaintiffs' unjust enrichment claim does not warrant dismissal because the face of the Complaint demonstrates it was brought within the applicable limitations period and Plaintiffs' have further pleaded sufficient facts to demonstrate that Texas's discovery rule applies.

## VI. PLAINTIFF'S CLAIM FOR ATTORNEY'S FEES IS NOT RIPE FOR RESOLUTION

Under TUFTA, a court may award the prevailing party attorneys' fees and costs. TEX. BUS. & COM. CODE ANN. § 24.013. The parties are in agreement that there is no such provision under FUFTA. *See* Plaintiffs' Response (Doc. 14 at 3–4 n.3). As noted throughout this report, Suarez has not provided the Court with sufficient information to warrant application of Florida law. Therefore, in assuming that Texas law is applicable, Plaintiffs' claim for attorneys' fees is an available form of recovery in Texas and pleaded in their Complaint. That claim should not be dismissed at this time.

## VII. CONCLUSION

Plaintiffs have sufficiently pleaded claims upon which relief can be granted pursuant to FED. R. CIV. P. 8(a)(2), 9(b), and 12(b)(6). Further, Suarez has not established from the face of the Complaint that Plaintiffs' actual intent fraud claim under TUFTA and unjust enrichment claim are either time-barred or partially time-barred. Therefore, the Court should deny Suarez's Motion to Dismiss these claims and Plaintiffs should not be required to replead same.

However, Suarez has established from the face of the Complaint that portions of Plaintiffs' claim for constructive fraudulent transfers under TUFTA are time-barred or partially time-barred as falling outside of TUFTA's four-year limitations period. Plaintiffs' Complaint

33

fails to establish a basis for applying equitable tolling to the limitations period under TUFTA's section 24.010(a)(2), which governs section 24.006(a) claims, and therefore Plaintiffs' allegations of constructively fraudulent transfers occurring prior to December 17, 2006, should be dismissed as time-barred. In accordance with the relief Suarez seeks, Plaintiffs should be afforded the opportunity to amend their Complaint to allege transfers under the groupings "CD Proceeds from Suarez's CDs," "Expenses," and "Other Pay" to reflect only the amounts Suarez allegedly received after December 17, 2006.

**IT IS, THEREFORE, RECOMMENDED** that the United States district judge deny Defendant's Motion to Dismiss in part and grant it in part.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

The clerk shall deliver a copy of this report and recommendation to all counsel of record by first class mail or electronic means.

Dated August 26, 2013

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE